IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AGNES ROSE BUSS,

                Plaintiff,                OPINION AND ORDER

v.

                                                    18-cv-565-wmc

ANDREW SAUL,
Commissioner of Social Security

                Defendant.

Plaintiff Agnes Rose Buss seeks judicial review of a final decision by defendant Andrew M. Saul, Commissioner of the Social Security Administration, finding that Buss was not disabled within the meaning of the Social Security Act. Buss argues that the administrative law judge, Joseph D. Jacobson, committed three errors meriting remand. The court held oral argument on this case on October 28, 2019, at which counsel for both sides participated telephonically. For the reasons set forth below, the final decision of the Commissioner will be affirmed.

BACKGROUND[1]

Plaintiff Agnes Rose Buss seeks disability insurance benefits and supplemental security income based on an alleged disability that began on June 2, 2013. Her claims were initially denied on October 1, 2014, and again upon reconsideration on August 13, 2015. On June 28, 2017, an administrative hearing was held before Administrative Law Judge Joseph D. Jacobson. Two months later, the ALJ issued a twelve-page written decision

---

[1] The administrative record ("AR") is available at dkt. #7.

denying Buss's claims. Buss has now appealed this decision pursuant to 42 U.S.C. § 405(g).

Buss suffers from a number of impairments, including fibromyalgia, chronic pain in her lower back and legs, degenerative disk disease with bulging disk, depression, learning disability, hypertriglyceridemia, peripheral edema, hypothyroidism, asthma, headaches, and obstructive sleep apnea. The combination of these impairments, plaintiff argues, impose more than moderate limitations on Buss's ability to perform work-related activities and maintain gainful employment. Of particular prominence in plaintiff's medical records is the chronic pain that she experiences as a result of these impairments.

The ALJ assessed Buss's alleged disability under the five step sequential framework set forth in 20 C.F.R. § 404.1520. The ALJ first found that Buss met the insured status requirements of the Social Security Act through March 31, 2020, and had not engaged in substantial gainful activity since the alleged onset date. (AR at 18.) The ALJ next found that Buss had the following severe impairments: inflammatory arthritis, obesity, spine disorder, and fibromyalgia. (AR at 19.) The ALJ also found that Buss suffered from a number of nonsevere physical impairments, including carpal tunnel syndrome, mild obstructive sleep apnea, asthma, hypothyroidism, hypertension, and headaches. (AR at 19.) Finally, the ALJ assessed Buss's mental impairments under the four areas of mental functioning set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 19-20.) The ALJ noted in part that Buss had a "mild limitation" in the function area of "concentrating, persisting, or maintaining pace." (AR at 20.) Overall, the ALJ concluded that Buss's mental impairment caused no more than mild limitation in any of the functional areas and was, therefore, nonsevere. (AR at 20.)

The ALJ next considered whether Buss's impairments met or were medically equal to the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR at 20.) The ALJ specifically considered: whether Buss's back impairments met the severity requirements under Listing 1.04; whether her inflammatory arthritis met the requirements under Listing 14.09; and whether her fibromyalgia or obesity (for which there are no specific listings) gave rise to a listing-level severity. (AR at 21.) The ALJ ultimately found that Buss did not have a physical impairment that met or equaled one of the listed impairments. (AR at 20-21.) In reaching this finding, the ALJ also purported to have considered "all of claimants impairments . . . both individually *and* in combination." (AR at 20 (emphasis added).)

The ALJ then evaluated Schultz's residual functional capacity ("RFC"). As a part of his analysis, he considered the opinion evidence of Erin Maslowski, whom he identified as Buss's "treating physician." (AR at 24.) Dr. Maslowski opined that:

> The claimant could sit 4 hours a day, stand/walk 4 hours a day, would need a sit/stand/walk option, would require unscheduled breaks, and would need to elevate her legs. Dr. Maslowski opined the claimant could lift and carry 10 pounds occasionally and could rarely or never twist, bend, crouch, or climb stairs and ladders. She opined the claimant would be off task 25% of the workday, could perform low stress work, and would miss more than 4 days of work per months.

(AR at 24.) Nevertheless, the ALJ accorded Dr. Maslowski's opinion "limited weight," because: it was "not consistent with a longitudinal review of the objective medical evidence of record"; she "did not provide significant treatment during the period at issue"; and her findings were based "more on the claimant's subjective reports and not on a medical professional's evaluation of the objective medical evidence of record." (AR at 24.)

3

Instead, the ALJ concluded that Buss had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), if limited to: (1) a sit/stand option; (2) occasional stooping, crouching, kneeling, crawling, and climbing ramps and stairs; (3) never climbing ladders, ropes, or scaffolds; (4) frequent handling and fingering bilaterally; (5) jobs that can be performed while using a cane for prolonged ambulation or uneven terrain; (6) avoiding concentrated exposure to irritants and all exposure to moving machinery and unprotected heights; and (7) simple, routine, repetitive tasks. (AR at 22.) Given this RFC, and considering Buss's age, education and work experience, the ALJ further accepted the vocational expert's opinion that jobs exist in sufficient numbers in the national economy for Buss to perform. (AR at 26.) As a result, the ALJ ultimately concluded that Buss had not been under a disability as defined by the Social Security Act. (AR at 26.)

OPINION

Judicial review of a final decision by the Commissioner of Social Security is authorized by 42 U.S.C. § 405(g). An ALJ's findings of fact are considered "conclusive," so long as they are supported by "substantial evidence." § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the Commissioner's findings, the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Even when adequate evidence exists in the record to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the final conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 2006). To build this bridge, "the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544.

In this case, plaintiff argues that the ALJ: (1) did not accord the proper weight to the opinion evidence of her treating physician, Erin Maslowski; (2) failed to assess properly her actual residual functional capacity by ignoring additional limitations in attention, concentration, and pace, as well as handling and fingering; and (3) did not adequately consider whether her impairments met the severity requirements under listing 1.04. The court addresses each argument in turn below.

**I. Treating Source Opinion**

Generally, special weight is given to opinion evidence from a "treating source" -- a claimant's own acceptable medical source who provides or has provided the claimant with medical treatment and has had an ongoing treatment relationship with the claimant. 20

5

C.F.R. § 404.1527(a)(2). [2] Specifically, the regulations provide that "[i]f we find that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." § 404.1527(c)(2). If a treating source's medical opinion is not given controlling weight, the ALJ must weigh the opinion using a number of factors, including the length and nature of the treating relationship, whether the medical opinion is well-supported, the consistency of the opinion with the record as a whole, the source's specialization, and "other factors." § 404.1527(c). If an ALJ discounts the opinion of a treating physician, he must offer "good reasons" for doing so. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

Here, the ALJ correctly acknowledged that Dr. Maslowski was one of Buss's treating physicians and therefore a "treating source" under the regulations. (AR at 24.) The ALJ, however, ultimately accorded only "limited weight" to Dr. Maslowski's opinion. (AR at 24.) Plaintiff does not now argue that the ALJ should have accorded Dr. Maslowski's opinion "controlling weight."[3] Rather, she argues, the ALJ erred because he failed to provide "good reasons" for substantially discounting Dr. Maslowski's opinion.

---

[2] "The treating physician rule was eliminated by the Social Security Administration for claims filed after March 27, 2017." *McFadden v. Berryhill*, 721 F. App'x 501, 505 (7th Cir. 2018). Because Buss's claim was filed in 2013, however, the court continues to apply the "controlling weight" standard under § 404.1527(c)(2).

[3] Although plaintiff's initial brief argued that "[g]iven that Dr. Maslowski's opinion was consistent with the record and based on appropriate diagnostic techniques, the opinion should have been given controlling weight" (Pl.'s Br. (dkt. #10) 15), plaintiff's counsel conceded this position was an overreach at oral argument.

However, the ALJ actually offered a number of well-supported reasons for assigning Dr. Maslowski's opinion "limited weight." First, the ALJ reasoned that the opinion was "not consistent with a longitudinal review of the objective medical evidence of record." (AR at 24.) Specifically, the ALJ noted that even Dr. Maslowski found "few musculoskeletal abnormalities," and concluded that Buss should be seen on an as-needed basis because her pain "was myofascial in nature, in addition to pain from a disc herniation." (AR at 24.) Moreover, the ALJ noted that other treating physicians had indicated Buss was not in acute distress, had a normal gait, and had full muscle strength and tone. (AR at 24.) Of particular salience, the ALJ referenced Dr. Joseph Binegar's (one of Buss's other treating physicians) note from January 11, 2016, in which he wrote "[a]t this point in time, we would not be able to provide [Buss] with a note indicating that she is totally disabled and not able to work at all." (AR at 24, 581.) This evidence was relevant to the ALJ's determination of weight to be given to Dr. Maslowski's opinion as the regulations provide that inconsistency with the record as a whole is a factor that may properly diminish an opinion's weight. *See* 20 C.F.R. § 404.1527(c)(4).

Second, the ALJ explained that he gave limited weight to Dr. Maslowski's opinion because "it appears the opined limitations are based more on the claimant's subjective reports and not on a medical professional's evaluation of the objective medical evidence of record." (AR at 24.) This conclusion was reasonably drawn from the ALJ's review of the evidence supporting the opinion, combined with his earlier observations regarding the inconsistent objective medical evidence on the record. The extent and type of evidence presented to support an opinion is properly considered in weighing it, including whether the opinion was based on the claimant's subjective testimony or on objective medical

7

evidence. *See* 20 C.F.R. § 404.1527(c)(3); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (upholding ALJ's decision to discount treating physician's finding that claimant had limited range of motion because it was not supported by x-rays or other objective medical evidence). In arguing that the ALJ's reasons were insufficient, plaintiff cites to *Herrman v. Colvin*, 772 F.3d 1110 (7th Cir. 2014) for the proposition that "an ALJ may not reject a treating source statement merely because the findings are not supported by extensive and in-depth records." (Pl.'s Br. (dkt. #10) 17.) Even accepting such a proposition in the abstract, however, an ALJ may properly consider the extent and type of evidence supporting the opinion. *See* 20 C.F.R. § 404.1527(c)(3). Here, the ALJ did not reject Dr. Maslowski's opinion "merely" because it was not supported by "extensive and in-depth records"; rather, he properly noted that the opinion was not supported by the other medical evidence.

Third, and finally, the ALJ properly considered the extent of Dr. Maslowski's actual treating relationship with Buss. Specifically, he noted that Dr. Maslowski had "primarily treated the claimant before the period at issue" and that Buss had mostly been seen by two other medical professionals since her alleged onset date. (AR at 24.) The ALJ also noted that Dr. Maslowski provided Buss with facet injections and discussed the two appointments Dr. Maslowski had with Buss during the relevant period in October 2014 and February 2015. (AR at 24.) The ALJ's opinion, therefore, appropriately considered the length, nature, and extent of Dr. Maslowski's treatment relationship with Buss. *See* 20 C.F.R. § 404.1527(c)(2). Plaintiff explains that the reason Buss was seen less frequently by Dr. Maslowski in 2014 was because she had been referred to physical therapy and rheumatology. However, this fact does not call into question the ALJ's reasoning for

8

discounting her opinions about Buss's later condition; indeed, it supports the ALJ's finding that Dr. Maslowski had a limited treating relationship during the relevant period. Plaintiff also objects that the ALJ did not explicitly discuss Dr. Maslowski's MRI orders in October 2013 and December 2014 or that Dr. Maslowski provided facet injections not only before Buss's alleged onset date but also through September 2013. Those facts, however, do not contradict any of the ALJ's reasoning nor offer a new line of evidence, and an "ALJ is not required to address every piece of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

In sum, the court concludes that the ALJ examined Dr. Maslowski's opinion in light of the proper regulatory factors and provided "good reasons" for discounting the opinion. Because the ALJ's decision is adequately supported, the court is not permitted to re-weigh evidence or decide facts anew, and will, therefore, affirm his determination.

## II. Residual Functional Capacity

Plaintiff next argues that the ALJ made two errors in assessing plaintiff's RFC. *First*, plaintiff argues that the ALJ failed to adequately address potential limitations in attention, concentration or work pace ("CPP"). Specifically, plaintiff contends that because the ALJ found that Buss's chronic pain would limit her to simple, routine work, the ALJ was also required to explicitly consider whether her chronic pain would affect her CPP. According to plaintiff, the ALJ failed to build a logical bridge by not specifically articulating why Buss's chronic pain would preclude only complex and detailed tasks, but not affect the pace of her work. However, the ALJ did specifically consider Buss's CPP limitations at step two and found them to be only "mild." (AR at 20.) Moreover, the ALJ specifically

9

referenced Buss's difficulty concentrating due to pain in evaluating her CPP limitations. (AR at 20.) Plaintiff also points to cases finding error where an ALJ had found moderate limitations in CPP but only oriented the vocational expert to a limitation to simple, routine work. (*See* Pl.'s Br. (dkt. #10) 21 (citing *Copeland v. Astrue*, 776 F. Supp. 2d 828, 845 (N.D. Ind. 2011); *Holland v. Comm'r of Soc. Sec.*, 195 F. Supp. 3d 1011, 1020-21 (N.D. Ind. 2016).) These cases are also inapposite, however, since both involved claimants with moderate CPP limitations, while here Buss was found to have only a mild limitation in CPP. (*See* AR at 20.)

The court recognizes that in some cases, an ALJ has been held to have erred after finding mild limitations in mental functioning at step two but then failing to incorporate that finding into his RFC formulation. *See, e.g.*, *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (holding that ALJ erred by failing to include in the RFC mild limitations in "understanding, remembering, and carrying out simple instructions" found at step two); *Simon-Leveque v. Colvin*, 229 F. Supp. 3d 778, 787 (N.D. Ill. 2017) ("While a mild, or even a moderate, limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment . . . the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC."). But the court views these cases not as creating a *per se* rule that *any* mild limitation found at step two must be incorporated into the claimant's RFC; rather, each limitation should be considered in the context of the overall opinion.

*Second*, plaintiff argues that the ALJ failed to consider adequately Buss's limitations related to handling and fingering. In the RFC, the ALJ found that Buss can engage in "frequent handling and fingering" due to her "nonsevere carpal tunnel syndrome . . .

10

combined with her other impairments." (AR at 25.)  Plaintiff does not argue that the ALJ's limitation was not supported by substantial evidence, nor could she, as Dr. Maslowski and both state agency physicians opined that Buss needed *no* manipulative restrictions.  (AR at 75, 92, 398.)

Instead, plaintiff finds fault in the ALJ's claimed failure to provide a "rationale as to why Buss was limited to frequent, as opposed to occasional, handling and fingering."  (Pl.'s Br. (dkt. #10) 18.)  Although the ALJ's rationale is admittedly brief, the court does not agree that he failed to build a logical bridge to his conclusion.  Specifically, he explained that his conclusion was "[d]ue to the claimant's nonsevere carpal tunnel syndrome, when combined with her other impairments."  (AR at 25.)  And in finding that the claimant's carpal tunnel was nonsevere, the ALJ pointed to evidence in the record showing that "clinical signs always revealed full grip strength and intact sensation" and that Buss "manages her [carpal tunnel] symptoms with bilateral wrist braces, with no discussion of surgical intervention."  (AR at 19.)

As for the ALJ's alleged error in failing to reference a report by Angela Froiseth in which she noted that Buss had difficulty gripping and grasping with her right hand, Froiseth's observation appears to be only a recording of Buss's own subjective responses -- the report specifically states that "Angela wrote down Agnes' responses."  (AR at 245.) While an ALJ must articulate reasons for rejecting entire lines of evidence and must build a logical bridge between his conclusion and the evidence, an "ALJ is not required to address every piece of evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  The ALJ acknowledged other evidence where Buss had reported a limited ability to grab, grasp and grip.  (*See* AR at 19, 22.)   Therefore, the ALJ adequately considered this line of evidence

11

and did not need to separately cite Froiseth's report capturing Buss's description of a similar limitation.

**III. Listing 1.04**

Plaintiff finally argues that the ALJ did not adequately consider whether Buss's impairments met the severity requirements under listing 1.04C. That listing discusses:

> [D]isorders of the spine . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . .
> (C) Lumbar spinal stenosis resulting in pseudoclaudication,[4] established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(C). "[A] claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.).

Plaintiff first argues in part that the ALJ failed to adequately consider Buss's obesity and fibromyalgia in connection with her back problems. Although obesity and fibromyalgia are not listed impairments, Social Security Ruling 12-2p requires an ALJ to determine whether a claimant's obesity or fibromyalgia medically equals a listing singly or in combination with other impairments. SSR 12-2p. Here, the ALJ dedicated a separate

---

[4] "Pseudoclaudication describes the pain and weakness, usually in the upper legs, that is brought on by exercise or position and does not resolve promptly with cessation of exercise. Pseudoclaudication is worsened on standing or walking. The symptoms may be bilateral (on both sides or may be only on one side if the spine is uneven as in the case of mild to moderate scoliosis)." Ann G. Hirschman, 2 *Med. Proof of Social Security Disability* § 2:3 (2018).

paragraph to both impairments, ultimately concluding that neither rose to a condition of listing-level severity. (AR at 21.)

Plaintiff also points to specific evidence which, she argues, should have been considered in the ALJ's determination. Specifically, plaintiff notes that the ALJ did not discuss Buss's diagnosis of spinal stenosis (*see* AR at 342), Dr. Maslowki's observation that Buss's condition was made worse by standing or sitting for a prolonged period of time (*see* AR at 396), and that she needed a cane (*see* AR at 465).

Certainly, an ALJ "must discuss the listing by name and offer more than a perfunctory analysis of the listing" in determining whether a claimant's condition meets or equals a listed impairment. *Barnett*, 381 F.3d at 668. But here the ALJ discussed listing 1.04 by name, explaining that he did not find claimant's back impairments to meet the requirements in that listing: "There is no evidence of nerve root or spinal cord compromise with either nerve root compression or spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." (AR at 21.) The ALJ additionally found that "the claimant is able to ambulate effectively, as defined in the regulations," prefacing this discussion by saying "all of claimant's impairments have been considered both individually and in combination." (AR at 20-21.) Additionally, the ALJ included a lengthy discussion of Buss's back condition in step five. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (ALJ's decision should be read as a whole and treatment of the record evidence should be considered in support of his conclusions at both step three and five). The ALJ noted in relevant part that an electromyogram suggested "no nerve-root involvement," that Buss had a "normal gait," and that Buss's primary care nurse practitioner found that the

use of the cane would sufficiently resolve Buss's mobility issue. (AR at 23.) Overall, this discussion was adequate, not "perfunctory," and therefore remand is not warranted.

ORDER

Accordingly, IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Agnes Rose Buss's application for disability benefits and supplemental security income is AFFIRMED. The clerk of court is further directed to enter judgment for defendant and close this case.

Entered this 31st day of October, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge